**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
ALVIN DORSEY,                             )
                                          )
             Plaintiff,                   )
                                          )
      v.                                  )        Civil Action No. 12-0534 (EGS)
                                          )
EXECUTIVE OFFICE FOR UNITED               )
STATES ATTORNEYS,                         )
                                          )
             Defendant.                   )
_____   )

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Renewed Motion for Summary Judgment,

ECF No. 34.[1]  For the reasons discussed below, the motion will be granted.

I.  BACKGROUND

*A.  Plaintiff's FOIA Request to the EOUSA*

In June 2011, pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552,

plaintiff submitted to the Executive Office for United States Attorneys ("EOUSA") a request for

"[s]urveillance video, video logs, handwritten call logs, warrants D.E.A.-6, promises, agreements

and any information that is required to be released under [FOIA]."  Defendant's Memorandum of

Points and Authorities in Support of Defendant's Motion for Summary Judgment, ECF No. 13-2,

Declaration of David Luczynski, ECF No. 13-4 ("Luczynski Decl."), Exhibit ("Ex.") A (FOIA

request); *see* Complaint Violation of the Freedom of Information Privacy Act ("Compl.") at 2.

_____

[1]  The FOIA applies only to executive branch agencies of the federal government, *see* 5 U.S.C. §
552(f)(1), and Court therefore proceeds as if plaintiff had named the U.S. Department of Justice,
of which the EOUSA, the DEA and the FBI are components, as the sole defendant.

The Court has found that the EOUSA conducted a search reasonably calculated to locate records responsive to plaintiff's FOIA request, *see Dorsey v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 253, 256 (D.D.C. 2013), that it properly withheld information under Exemptions 3, 5 and 7(C), Memorandum Opinion and Order, ECF No. 28 at 3-10, and that it released all reasonably segregable information to plaintiff, *id.*, ECF No. 38 at 10-11.

Among the records responsive to plaintiff's FOIA request to the EOUSA were records that originated at other components of the United States Department of Justice ("DOJ"). Luczynski Decl. ¶ 9.  The EOUSA "referred [these records to] the originating agencies[.]"  *Id.* Defendant has moved for summary judgment with respect to these referrals.  *See generally* Memorandum of Points and Authorities in Support of Defendant's Renewed Motion for Summary Judgment, ECF No. 34-1 ("Def.'s Renewed Mem.") at 7-18.

### B.  Referral to the Drug Enforcement Administration

The EOUSA referred 349 pages of records to the Drug Enforcement Administration ("DEA").  Def.'s Renewed Mem., Declaration of Katherine L. Myrick, ECF No. 34-3 ("Myrick Decl.") ¶ 5.  On review by DEA staff, it was determined that 159 pages of records were not responsive to the FOIA request, that one page was blank, and that 31 pages were duplicates. Myrick Decl. ¶ 7.  The remaining pages were processed; the DEA released 8 pages in full, released 55 pages in part, and withheld 95 pages in full, relying on Exemptions 7(C), 7(D), 7(E) and 7(F).  *Id.* ¶ 6.

### C.  Referral to the Federal Bureau of Investigation

The EOUSA referred 37 pages of records to the Federal Bureau of Investigation ("FBI"). Def.'s Renewed Mem., Declaration of David M. Hardy, ECF No. 34-5 ("Hardy Decl.") ¶¶ 4, 6. Two of these pages were deemed duplicates, and "[i]n order to avoid duplication cost and to

speed . . . processing," the FBI did not process these two pages.  *Id.* ¶ 4 n.1.  The FBI released

three pages in full, released 16 pages in part, and withheld 16 pages in full, *id.* ¶ 4, relying on

Exemptions 6 and 7(C), *id.* ¶ 5.

## II.  DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

In a FOIA action to compel production of agency records, the agency "is entitled to

summary judgment if no material facts are in dispute and if it demonstrates 'that each document

that falls within the class requested either has been produced . . . or is wholly exempt from the

[FOIA's] inspection requirements.'"  *Students Against Genocide v. Dep't of State*, 257 F.3d 828,

833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  Summary

judgment may be based solely on information provided in an agency's supporting affidavits or

declarations if they are relatively detailed and when they describe "the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record [or] by evidence of agency bad faith."  *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981).  "To successfully challenge an agency's showing that it

complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that

there is a genuine issue with respect to whether the agency has improperly withheld extant

agency records."  *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010)

(quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### A.  *Exemptions 6 and 7(F)*

"The FBI's practice is to assert Exemption 6 in conjunction with Exemption 7(C)."

Hardy Decl. ¶ 17 n.5.  Review of the FBI's submission reveals that, in each instance that the FBI

withholds information under Exemption 6, it also withholds the same information under

Exemption 7(C).  *See generally* Hardy Decl., Ex. B (Bates-numbered copies of pages released in

full or in part and deleted information sheets reflecting pages withheld in full).  The Court finds

that the relevant information properly is withheld under Exemption 7(C) alone, and it does not

consider whether Exemption 6 applies to the same information.  *See Roth v. U.S. Dep't of*

*Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("If the information withheld here was compiled

for law enforcement purposes, thus implicating Exemption 7(C), then we would have no need to

consider Exemption 6 separately because all information that would fall within the scope of

Exemption 6 would also be immune from disclosure under Exemption 7(C)."  (internal quotation

marks omitted)).

Similarly, where the DEA withholds information under Exemption 7(F), it also relies on

either Exemption 7(C) or Exemption (7)(D) as a basis to withhold the same information.  *See*

*generally* Errata to Defendant's Renewed Motion for Summary Judgment, ECF No. 36, Ex. D

(Corrected Exhibit D to the Declaration of Katherine L. Myrick (Vaughn Index)).  The Court

concludes that the relevant information properly is withheld under either Exemption 7(C) or

Exemption 7(D), and does not consider whether Exemption 7(F) applies independently to the

same information.  *See Roth*, 642 F.3d at 1173; *Simon v. Dep't of Justice*, 980 F.2d 782, 785

(D.C. Cir. 1994) (finding that, where information furnished by confidential source during course

of criminal investigation fell within the scope of Exemption 7(D), court "need not address

whether Exemption 7(C) . . . would independently justify the FBI in withholding the requested document").

### C. Exemption 7

#### 1. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The FBI's declarant states that "the FBI assisted the Pickens County Sheriff's Office, South Carolina, in its investigation of plaintiff for alleged drug trafficking in crack/cocaine," and that the relevant FBI records were compiled for this law enforcement purpose. Hardy Decl. ¶ 13. The DEA's declarant explains that the records referred by the EOUSA "were compiled during a criminal law enforcement investigation of the plaintiff and several third-parties" and "are contained in investigative case files . . . in IRFS," Myrick Decl. ¶ 18, the DEA Investigative Reporting and Filing System, *id*. ¶ 9. Thus, both components demonstrate that the referred records fall within the scope of Exemption 7.

#### 2. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5

U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure.  *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007).  The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."  *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The FBI withholds the names and identifying information about local law enforcement employees.[2]  Hardy Decl. ¶ 17.  The declarant explains that these individuals "were acting in their official capacities and aided the FBI in the law enforcement investigative activities reflected in the records responsive to plaintiff's request."  *Id*.  They were "responsible for conducting, supervising, and/or maintaining the investigative activities" by, for example, "documenting and

---

[2]  The term "'identifying information' includes, but is not limited to, dates of birth, social security numbers, addresses, telephone numbers, and/or other personal information."  Hardy Decl. ¶ 17 n.6.

compiling information" and "reporting on the status of the investigation." *Id*. The declarant further states that these employees did not choose the assignment, and that "[p]ublicity (adverse or otherwise) regarding any particular investigation [to which] they have been assigned may seriously prejudice their effectiveness in conducting other investigations." *Id*. He states that "publicity associated with the release of [their identities] in connection with a particular investigation could trigger hostility" and also may subject them to "unnecessary, unofficial questioning as to the course of an investigation." *Id*. These employees "come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives," such that "an individual targeted by such law enforcement actions [could] carry a grudge." *Id*. If the identities of these employees were released, the declarant asserts, these individuals could be subjected "to unnecessary and unwelcome harassment that would invade their privacy." *Id*. The FBI offers a similar rationale for withholding the names of and identifying information about "personnel from state, local, and non-FBI federal government agencies who provided information to[] or otherwise assisted the FBI in its investigation of plaintiff and/or others." *Id*. ¶ 18.

The FBI also withholds "the names and identifying information of third parties who were merely mentioned in the criminal investigative files containing information responsive to plaintiff's request." *Id*. ¶ 19. These persons "were not of investigative interest to the FBI," and appear in the records only because they had come "into contact with subjects of FBI investigation(s)." *Id*. They maintain, the declarant states, a "substantial privacy interest[] in not having this information disclosed," as disclosure would connect them with a criminal investigation and with it the "extremely negative connotation" that connection with an FBI criminal investigation would bring. *Id*.

The DEA withholds "[t]he identities of DEA Special Agents and other law enforcement officers," Myrick Decl. ¶ 23, who "were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals," *id*. ¶ 24.  Its declarant explains that these officers "were, and possibly still are, in positions of access to information regarding official law enforcement investigations," and "[i]f their identities were released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing or closed investigations."  *Id*.   In no instance does either agency identify a public interest in disclosure to outweigh the privacy interests of these third parties.  *See id*. ¶¶ 22, 24; Hardy Decl. ¶¶ 17-19.

Plaintiff argues that the EOUSA failed to limit its reliance on Exemptions 7(C), 7(F) and 6 "to the specific information to which it applies (names, addresses and other identifying information) but not the entire page or document in which the information appears." Plaintiff['s] Opposition Motion to Defendant['s] Summary Judgment, ECF No. 37 ("Pl.'s Opp'n") at 1.  Because the Court already has determined that the EOUSA properly invoked these exemptions, *see* Memorandum Opinion and Order, ECF No. 28 at 9-10, plaintiff presumably directs his argument at the DEA and the FBI.  His argument actually pertains to segregability rather than the agencies' reliance on the exemptions themselves.  The Court therefore treats as conceded defendant's motion for summary judgment with respect to Exemptions 6, 7(C) and 7(F).  *See, e.g., Jewett v. U.S. Dep't of State*, No. 11-cv-1852, 2013 WL 550077, at *9 (D.D.C. Feb. 14, 2013) (treating as conceded defendants' reliance on FOIA exemption where plaintiff "offers no rebuttal").

3.  Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation."  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).  Rather, a source's confidentiality must be determined on a case-by-case basis. *Id*. at 179-80.  "A source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

Where an agency withholds information provided under an express grant of confidentiality, it "is required to come forward with probative evidence that the source did in fact receive an express grant of confidentiality."  *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995).  For example, an agency might produce "contemporaneous documents from [its] files reflecting the express grants of confidentiality [or] evidence of a consistent policy of expressly granting confidentiality to certain designated sources[.]"  *Id*.  "When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential."  *Roth*, 642 F.3d at 1184 (internal quotation marks and citation omitted).  "[T]he

9

nature of the crime and the source's relation to it" are factors relevant to determining whether implied confidentiality exists. *Landano*, 508 U.S. at 179.

The DEA withholds "information . . . pertain[ing] to a coded informant with an express grant of confidentiality." Myrick Decl. ¶ 26. The declarant explains that a coded informant has "a continuing cooperative association with DEA." *Id.* ¶ 27. Each coded informant is "expressly assured confidentiality in [his or her identity] and the information [he or she] provide[s] to DEA." *Id.* Further, this individual is "assured that [his or her] name[] will not be used in DEA investigative materials," and therefore is "assigned an identification code which is used in place of [his or her] name" or is "referred to as CI." *Id.* The declarant states that, "[b]ecause of the nature of DEA's criminal investigations, any information that could identify the informant could subject [him or her] to serious harm, substantial repercussions, and possibly even death." *Id.* ¶ 26.

In addition, the DEA withholds information about "individuals to whom confidentiality was implied" due to the individuals' "involvement with the drug trafficking activities of plaintiff and his criminal associates." *Id.* ¶ 30; *see id.* ¶ 31. The declarant states that plaintiff and nine others were "indicted . . . for and convicted of conspiracy to distribute cocaine and cocaine base." *Id.* ¶ 31. She notes that plaintiff "has a criminal history that includes aggravated battery," and that his associates' criminal histories "include incidences of second degree murder, burglary, robbery, aggravated battery on a law enforcement officer, and arrests that resulted in the seizure of firearms." *Id.* Because the DEA "has . . . found that violence is inherent in the trafficking of controlled substances," because plaintiff and his associates have a history of violence, and because the individuals whose identities are protected were involved with the drug trafficking

activities of plaintiff and his associates, the DEA finds that these sources "plaintiff would fear for their safety if their identities or the information they provided was revealed. *Id.* ¶ 32.

Plaintiff asserts that the DEA "failed to provide express assurances of confidentiality," Pl.'s Opp'n at 2, yet he offers no support in the record for his assertion. In a FOIA case, an agency's supporting declaration is accorded a presumption of good faith, *see, e.g., King v. U.S. Dep't of Justice*, 772 F. Supp. 2d 14, 20 (D.D.C. 2010), and plaintiff presents no evidence to rebut the presumption. The Court concludes that the DEA properly withheld under Exemption 7(D) the identity of and information provided by a coded informant under an express assurance of confidentiality and the identities of and information provided by individuals involved in drug trafficking activities with plaintiff and his associates under an implied assurance of confidentiality.

### 4. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The DEA withholds G-DEP codes and NADDIS numbers, described as "part of DEA's internal system of identifying information and individuals in furtherance of [its] enforcement responsibilities," under Exemption 7(D). Myrick Decl. ¶ 35.

The declarant explains that a G-DEP code is assigned when a case file is opened, and it "indicate[s] the classification of the violator(s), the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal

activity." Myrick Decl. ¶ 37.  If a G-DEP code were released, the declarant states, violators could "identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings." *Id*. ¶ 39.  With this knowledge, "[s]uspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create excuses for suspected activities." *Id*.  In short, disclosure of a G-DEP code "would . . . thwart [DEA's] investigative and law enforcement efforts." *Id*.

A NADDIS number is a "multi-digit number[] assigned to [a] drug violator[] and suspected drug violator[]," or to an entity of investigative interest to the DEA. *Id*. ¶ 38.  Each NADDIS number is "unique and personal to the individual to whom the number applies." *Id*. ¶ 40.  "Because of the manner in which [it is] assigned and . . . used, release of [a NADDIS number] could allow [a] violator[] to avoid apprehension, and could place law enforcement personnel in danger, since the details of many details of a DEA investigation would be disclosed" along with the NADDIS number  *Id*.  If details of a DEA investigation were made public, a violator "would be aware of how to respond in different situations where detection and/or apprehension are eminent [sic]," and thus he could "respond in a manner that would help [him] avoid detection and arrest." *Id*.

Plaintiff's assertion that the DEA "failed to provide some explanation of what procedures are involved and how they would be disclosed," Pl.'s Opp'n at 2, ignores the content of the DEA's supporting declaration.  The Court concludes that the DEA properly has withheld G-DEP codes and NADDIS numbers under Exemption 7(E).  *See, e.g., Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 151 (D.D.C. 2013) (withholding G-DEP codes and NADDIS numbers

under Exemption 7(E)); *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 28-29 (D.D.C. 2012)

(withholding NADDIS numbers).

### D.  Segregability

If a record contains some information that is exempt from disclosure, any reasonably

segregable information must be released after deleting the exempt portions, unless the non-

exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see*

*Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022, 1027 (D.C. Cir. 1999).

A court errs, for example, if it "simply approve[s] the withholding of an entire document without

entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons*, 927

F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the*

*Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

The FBI's declarant avers that "each responsive page was individually examined to

identify non-exempt information that could be reasonably segregated from exempt information

for release," and that "the only information withheld . . . consists of information that would

trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA

exemptions."  Hardy Decl. ¶ 20.  Thus, the declarant concludes, all segregable material has been

released.  *See id*.

The DEA's declarant avers that entire pages have been withheld only where:

> the release of any additional information would (1) result in the
> disclosure of no useful information, or incomprehensible words
> and/or phrases that would not shed any light on how the
> Government conducts business, (2) could result in compromising
> the identity of and information provided by sources of information
> who were granted express confidentiality or,  because of the
> circumstance, implied confidentiality was applicable, (3) would be
> an unwarranted invasion of personal privacy when balanced
> against the public interest in the release of information gathered
> during the course of a criminal investigation, and/or (4) place in

> jeopardy the lives and safety of third parties which includes
> sources of information, individuals associated with or mentioned in
> the investigative reports, and DEA agents and other law
> enforcement personnel.

Myrick Decl. ¶ 46.  Thus, she concludes, there remained "no reasonably segregable information

that could be released." *Id*. ¶ 47.

Plaintiff contends that defendant fails to meet its burden by showing that a document

cannot be further segregated in order that additional information be released.  *See* Pl.'s Opp'n at

2.  Contrary to plaintiff's assertion, from the Court's review of the supporting declarations, the

DEA's Vaughn Index, and copies of the relevant FBI records, defendant demonstrates that all

reasonably segregable material has been released from the records referred by the EOUSA.  *See*

*Abdelfattah v. U.S. Immigration and Customs Enforcement*, 851 F. Supp. 2d 141, 146 (D.D.C.

2012) (supplying an affidavit stating that  documents were reviewed line-by-line, a sufficiently

detailed Vaughn index, and declarations to explain why each document was properly withheld

meets agency obligation regarding segregability).

### E.  Fees

Notwithstanding plaintiff's purported reliance on the Privacy Act, *see generally* Compl.,

the Court and defendant have treated the complaint as one bringing claims under the FOIA.

Consequently, insofar as plaintiff demands damages, *see id*. at 3, the Court has construed

plaintiff's submission titled "Substantially Prevailed," ECF No. 40, as a motion for attorney fees

and costs ("Pl.'s Mot. for Fees") pursuant to 5 U.S.C. § 552(a)(4)(E).

The FOIA permits a district court to "assess against the United States  . . . other litigation

costs reasonably incurred in any case . . . in which the [plaintiff] has substantially prevailed."  5

U.S.C. § 552(a)(4)(E)(i).  A party substantially prevails if he has obtained relief "through . . . a

voluntary or unilateral change in position by the agency, if the complainant's claim is not

insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).  "This provision codifies the so-called

'catalyst theory' of fee eligibility, under which 'FOIA plaintiffs [are] eligible for a fee award if

the lawsuit substantially caused the agency to release the requested records,' regardless of

whether the plaintiff obtained any court-ordered relief."  *Judicial Watch, Inc. v. U.S. Dep't of*

*Justice*, 878 F. Supp. 2d 225, 231 (D.D.C. 2012) (quoting *Davis v. U.S. Dep't of Justice*, 610

F.3d 750, 752 (D.C. Cir. 2010)).  Plaintiff argues that he has substantially prevailed because, "if

it had not been for this civil action," he would not have received any documents.  Pl.'s Mot. for

Fees at 2.  He demands reimbursement "for court fees of $350.00 and litigation cost[s] to be

determine[d] by the court."  *Id.*

     "[A] FOIA plaintiff who substantially prevails becomes *eligible* for attorney's fees [and

litigation costs]; whether the plaintiff is actually *entitled* to a fee award is a separate inquiry that

requires a court to consider a series of factors."  *Edmonds v. FBI*, 417 F.3d 1319, 1327 (D.C. Cir.

2005) (internal quotation marks, brackets and citations omitted) (emphasis in original).  The

decision to award attorneys' fees and costs is left to the Court's discretion.  *See Nationwide Bldg.*

*Maint., Inc. v. Sampson*, 559 F.2d 704, 705 (D.C. Cir. 1977) (commenting that § 552(a)(4)(E)

"contemplates a reasoned exercise of the courts' discretion taking into account all relevant

factors").  In making this decision, the Court considers "(1) the public benefit derived from the

case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the

records; and (4) the reasonableness of the agency's withholding of the requested documents."

*Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted).  "No one factor is

dispositive, although the [C]ourt will not assess fees when the agency has demonstrated that it

had a lawful right to withhold disclosure."  *Id.*

It is apparent that plaintiff is not entitled to fees and costs.  As a *pro se* plaintiff who is not an attorney, plaintiff is not eligible for attorney fees.  *See Benavides v. Bureau of Prisons*, 993 F.2d 257, 259 (D.C. Cir. 1993).  He neither identifies a public benefit derived from this case nor explains the nature of his interest in the requested information.  Lastly, the EOUSA, the FBI and the DEA adequately justify their decisions to withhold information under the claimed exemptions, and no other factor warrants an award of fees and costs to plaintiff.

### III.  CONCLUSION

The Court concludes that each component has demonstrated its compliance with the FOIA and that defendant is entitled to judgment as a matter of law.  Accordingly, the Court will grant its renewed motion for summary judgment.  An Order is issued separately.

DATE: March 19, 2015          /s/
                              EMMET G. SULLIVAN
                              United States District Judge