UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ALVIN DORSEY, )
)
        Plaintiff, )
)
    v. )   Civil Action No. 12-0534 (EGS)
)
EXECUTIVE OFFICE FOR UNITED )
STATES ATTORNEYS, )
)
        Defendant. )

---

## MEMORANDUM OPINION

### I. BACKGROUND

Plaintiff brought this action under the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. In June 2011, he submitted a request to the Executive Office for United States Attorneys ("EOUSA") for "surveillance video, video logs, handwritten notes, call logs, warrants . . . , promises, agreements and any information that is required to be released under [the] FOIA." Def.'s Mot. for Summ. J., Decl. of David Luczynski, ("First Luczynski Decl.") ¶ 4. Responsive records were located at the United States Attorney's Office for the Middle District of Florida, First Luczynski Decl. ¶ 11, and all had been "compiled . . . to facilitate the investigation and criminal prosecution of the [plaintiff]," *id*. ¶ 22. The EOUSA released 63 pages of records in full, released 2 pages in part, and withheld 1,347 pages in full, relying on Exemptions 3, 5, 7(C) and 7(F). Def.'s Reply to Pl.'s Opp'n to Def.'s Renewed Mot. for Summ. J., Supp. Decl. of

1

David Luczynski, ("Second Luczynski Decl.") ¶ 2; *see generally* Second Luczynski Decl., Ex. (Vaughn Index).

The United States Court of Appeals for the District of Columbia Circuit affirmed this Court's rulings with respect to information withheld by the EOUSA under Exemptions 3 and 5, and remanded the case "for a determination of whether any intelligible portion of the material withheld in full [under Exemptions 7(C) and 7(F)] can be segregated for release." *Dorsey v. Exec. Office for U.S. Attorneys*, No. 15-5104, 2016 WL 1272941, at *1 (D.C. Cir. Feb. 10, 2016) (per curiam). The Court ordered defendant to submit a more detailed declaration explaining its decision to withhold information under the claimed exemptions and its reasons why no reasonably segregable information can be released.

The EOUSA's declarant divided the withheld material into 14 groups, and the Court determined that the agency properly withheld in full the records in Document Groups 2, 3, 4, 7, 8, 10, 11, 12, 13, 14, 15 and 16. Memorandum Opinion and Order, *Dorsey v. Exec. Office for United States Attorneys*, No. 12-cv-0534 (D.D.C. Feb. 3, 2017). This matter has come before the Court on consideration of the EOUSA's withholdings in Document Groups 1, 5, 6 and 9.

## II. DISCUSSION

### *A. Document Group 1*

The EOUSA's declarant describes the contents of Document Group 1 as "transcriptions of statements made by third party individuals . . . used in prosecution and conviction of the [p]laintiff." Def.'s Notice of Compliance with the Court's February 3, 2017 Order, Supp. Decl. of David Luczynski ("Fourth Luczynski Decl.") ¶ 5. The EOUSA withholds "[p]ortions of the documents because of the danger posed to the authors and other mentioned individuals from

2

exposure of their identities to the public." Def.'s Notice of Compliance with Court's April 13, 2016 Order, Supp. Decl. of David Luczynski ("Third Luczynski Decl.") ¶ 3. The Vaughn index indicates that the EOUSA is protecting "the identities (including identifying information) of confidential informants providing information to law enforcement officers with an express promise of confidentiality." Vaughn Index (Doc. # 1).

Certain documents "contain nicknames and internal lingo used to describe local areas and places from which the author could be deduced," and because some statements are handwritten, the authors could be identified through handwriting analysis. Third Luczynski Decl. ¶ 3. Short of withholding the records in full, the declarant explains that "[t]here is no other way to prevent [these third parties] from being discovered and 'outed' as sources helping law enforcement." Fourth Luczynski Decl. ¶ 5. These individuals and plaintiff were involved in the same drug trafficking activities, and judging by the individuals' surnames, "the declarant . . . believe[s] the criminal group is comprised of two families," many members of which are "participating in the criminal enterprise." *Id*. The declarant states that the records contain "[t]he dates and times of the interviews [and] the names of the individuals who signed various affidavits," and disclosure of these records may prompt the families "to exact revenge or exert undue influence on those who provided information to the government . . . lead[ing] to [p]laintiff's conviction and the arrest of other members." *Id*.

*B. Document Group 5*

Document Group 5 contains 301 pages of records, many of which are court documents (such as Orders on First Appearance and Judgments). *Id*. ¶ 6. All "deal with third-party individuals and provide detailed descriptions of events, the individuals' nicknames, physical descriptions, birth dates, and other associations." *Id*.; Vaughn Index (Doc. # 5). The declarant

3

explains that "[t]he level of detail in the various forms[] containing descriptions of the offenses makes segregation impossible." *Id*. These individuals "know each other very well, and in some instances [know each other] intimately," as they are "relatives . . . with two distinct surnames." *Id*. ¶ 7. For this reason, "[e]veryone in [this] tightly knit group can be easily identified." *Id*. Accordingly, the declarant avers, "[t]he investigatory hearings, sentencings, affidavits and judgments" in Document Group 5 "can be easily associated with an individual if one has enough detailed information." *Id*. The declarant is not himself "intimately involved with this group," and he cannot "say how easily a cooperating individual providing information to the law enforcement officials could be identified." *Id*. Nevertheless, he avers that there is a "danger of harm and retaliation" to these third parties and their families if their identities were to be become known to "such a large group of closely knit families" and their associates. *Id*. Furthermore, the declarant explains that any "effort . . . to safely redact" identifying information from these records "would take significant time and resources while still not providing any . . . assurance that these [third parties] could not be identified[.]" *Id*. ¶ 8. Lastly, because drug trafficking activity "is readily associated with violent reprisal," redaction of these records "to maintain these individuals' safety" would leave only "unintelligible words or phrases, and Court and case identifying information associated with the prosecution of the [p]laintiff." *Id*.

### C. Document Group 6

The "police and other law enforcement investigatory materials" in Document Group 6 "contain highly detailed descriptions of investigations, observations, and methods of enforcing anti-drug trafficking laws as applied to particular individuals." Third Luczynski Decl. ¶ 8; Vaughn Index (Doc. # 6). There are 179 pages of records in Document Group 6, Third Luczynski Decl. ¶ 8, including Offence Incident Reports, Case Action Summary Sheets and Case

Reports, Fourth Luczynski Decl. ¶ 9. The declarant explains that "[i]nformation describing what event took place, or where, [or] how many officers or squad cars were involved . . . may help [p]laintiff and his co-conspirators identify [the] individuals" mentioned in the records. *Id*. ¶ 10. "Even without evidence of cooperation with law enforcement personnel, retaliation on the individuals may occur simply because their illegal activities were considered 'sloppy' by the [p]laintiff and directly or indirectly caused him to be . . . incarcerated." *Id.* According to the declarant, if the EOUSA were to redact information under Exemptions 7(C) and 7(F), there would "remain . . . little more than a formal title of the document, a form number associated with the document, and numerous disjointed words, phrases, and possibly . . . sentences," because "much of [the] content [of these documents] is inextricably intertwined with exempt information[.]" *Id*. ¶ 11. Even with extensive redaction, the declarant states that there still is a "danger in possible exposure of these [third parties] to serious harm from the [p]laintiff or his associates" given "the prevalent discussion of activities associated with drug trafficking, and possible reasons for retaliation against individuals who cooperated with the investigation[.]" *Id.*

*D. Document Group 9*

The declarant describes Document Group 9 as a 59-page "printed transcript of a telephone conversation between two individuals," each page of which "contains . . . references to certain events and individuals" to whom the participants refer "either by name, nick-names, or aliases." *Id*. ¶ 12. While an "innocuous statement," topic or joke "may seem meaningless to anyone looking at it from an uninformed position," the transcript may have great meaning to "[a]n individual well versed with the criminal activities associated with the [p]laintiff[.]" *Id.* Thus, the declarant states, any information remaining after the EOUSA invokes Exemption 7(C) remains "possibly dangerously revealing under [Exemption] 7(F)." *Id.* The EOUSA is without

5

knowledge as to "the level of involvement of the two individuals participating in the conversation," and the declarant cannot state whether one of the participants "is associated with . . . law enforcement, [p]laintiff, or any of his associates." *Id.* ¶ 13. If the EOUSA were to redact the transcript, the little remaining information would consist of "few randomly scattered, hopefully unrelated words" on each page. *Id.* And because of "the prevalent discussion of . . . drug trafficking [activities], and possible reasons for retaliation against individuals who cooperated with the investigation," the declarant asserts that the transcript is properly withheld in full. *Id.*

Plaintiff deems the EOUSA's latest submission deficient. He contends that the EOUSA "has failed to describe in detail how the disclosure will increase the chances . . . third parties will be harmed." Pl.'s Resp. to Def.'s Compliance Order ("Pl.'s Opp'n") at 2 (page numbers designated by CM/ECF). He argues that the EOUSA "must identify at least one individual with reasonable specificity and establish that disclosure of the documents could reasonably be ex[p]ected to endanger that individual." *Id.* Exemption 7(F) is not so limited, however.

"[A]n agency may . . . withhold [a] record pursuant to Exemption 7(F) if the record's release 'could reasonably be expected to endanger the life or physical safety of *any* individual.'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 523 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(7)(F)) (additional citation omitted) (emphasis added), *cert. denied sub nom. Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 136 S. Ct. 876 (2016). "The FOIA provides no textual basis for requiring [an agency], for purposes of Exemption 7(F), to identify the specific individuals at risk from disclosure[.]" *Id.* at 525. Furthermore, "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment

6

suffices." *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (emphasis in original).

The Court concludes that the EOUSA adequately supports its decision to withhold information under Exemption 7(C) on the ground that its disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7(C), and under Exemption 7(F) on the ground that its release "could reasonably be expected to endanger the life or physical safety of any individual," *id*. § 552(b)(7)(F).

*E. Segregability*

The FOIA requires the release of "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt" from disclosure. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022 (D.C. Cir. 1999). "[S]egregability depends entirely on what information is in a document and how it is presented," and an agency "should not be forced to provide such a detailed justification" that its explanation "would itself compromise the secret nature of potentially exempt information." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

The EOUSA's declarant avers that "no reasonably segregable non-exempt information was withheld from plaintiff." Second Luczynski Decl. ¶ 3; *see* Fourth Luczynski Decl. at 6 (page number designated by CM/ECF). Plaintiff contends that the declarant "fail[s] to distinguish exempt from non-exempt material within each document." Pl.'s Opp'n at 2. Based on the Court's review of all the EOUSA's declarations and its Vaughn Index, the EOUSA adequately specifies "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). The EOUSA thus justifies its

7

decision to withhold information under Exemptions 7(C) and 7(F), particularly given the nature of the underlying criminal activity described in the records, the level of detail of the information contained in the records, and the degree of familiarity between plaintiff and the third parties whose identities are being protected.

An Order is issued separately.


DATE: October 1, 2018
/s/
EMMET G. SULLIVAN
United States District Judge